IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| EDWARD D. JONES & CO., L.P. | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 7:20CV00433 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| SAMUEL (ED) CLYBURN, JR., | ) By: Hon. Glen E. Conrad |
| | ) Senior United States District Judge |
| Defendant. | ) |

On July 28, 2020, Edward D. Jones & Co., L.P. ("Edward Jones") filed this action against Samuel ("Ed") Clyburn, Jr., a former Edward Jones employee, asserting claims for misappropriation of trade secrets and breach of contract. The case is presently before the court on Edward Jones' motion for temporary restraining order and/or preliminary injunction. The court held a hearing on the motion via teleconference on August 14, 2020. For the following reasons, the motion for temporary restraining order will be granted.

## Background

### I.  The Parties

Edward Jones is a limited partnership and a registered broker/dealer that operates more than 14,000 branch offices across the United States. Compl. ¶ 7, ECF No. 1. Mr. Clyburn was employed by Edward Jones as a financial advisor from October 2009 until he resigned on June 26, 2020. Id. ¶ 16. Mr. Clyburn last worked for Edward Jones at an office on West Main Street in Wytheville, Virginia. Id. ¶ 8. He is now employed as a financial advisor with Ameriprise Financial Services, LLC ("Ameriprise") in Wytheville. Id. ¶ 9; Clyburn Decl. ¶ 16, ECF No. 13-1.

## II.     Mr. Clyburn's Employment Agreement with Edward Jones

As a condition of his employment with Edward Jones, Mr. Clyburn executed a "Financial Advisor Employment Agreement" ("the Agreement"). Compl. Ex. A, ECF No. 1-1. The Agreement provides that "all information regarding Edward Jones and Edward Jones clients is the property and trade secrets of Edward Jones," and that "[c]lient information and Edward Jones Trade Secrets, as defined in Paragraph 15, remain the exclusive property of Edward Jones whether retained on a computer disk, transferred to another computer or storage device or converted to any other format, including paper copies." Id. ¶ 5. Paragraph 15 defines "Edward Jones Trade Secrets" to include "all records of Edward Jones, whether original, duplicated, computerized, memorized, handwritten, or in any other form, and all information contained in those records, whether generated by Edward Jones or you including, but not limited to, . . . the identities, names, addresses and telephones of any account and/or client." Id. ¶ 15. The Agreement requires that any original, photocopied, or computerized records containing Edward Jones Trade Secrets be returned to Edward Jones upon an employee's termination or resignation. Id.

The Agreement contains a non-solicitation provision, which states as follows:

> [Y]ou agree for a period of one year following the termination of your employment, that you will not solicit by mail, phone, electronic communication, personal meeting, or any other means, either directly or indirectly, any clients of Edward Jones with whom you had direct contact during your employment with Edward Jones or about whom you have information or knowledge of confidential information or Edward Jones Trade Secrets, provided that the foregoing provision shall not apply to clients with whom you did securities and/or insurance business before you became an employee of Edward Jones. Your agreement not to solicit means that you will not, during your employment with Edward Jones, and for a period of one year thereafter, initiate any contact or communication of any kind whatsoever for the purpose of inviting, encouraging or requesting any Edward Jones client to transfer from Edward Jones to you or to your new employer, to open a new account with you or with your new employer or to otherwise

>       discontinue his/her/its patronage and business relationship with Edward Jones.

Id.

The Agreement also contains forum and choice-of-law provisions. Paragraph 17 provides that "any dispute, claim or controversy arising under this Agreement or as a result of your employment with Edward Jones between you and Edward Jones . . . shall be resolved by arbitration and without resort to litigation in court," and that any arbitration proceedings "shall be conducted in accordance with the FINRA rules then in effect." Id. ¶ 17. This provision, however, does not "affect or impair Edward Jones' right under any other provision of this Agreement to obtain equitable relief from a court of competent jurisdiction, which relief may remain in full force and effect pending the outcome of arbitration proceedings." Id. The Agreement further provides that it "shall be deemed a Missouri contract and governed by the laws of Missouri." Id. ¶ 22.

### III.     Mr. Clyburn's Resignation from Edward Jones

Mr. Clyburn resigned from Edward Jones on June 26, 2020. Compl. ¶ 8; Clyburn Decl. ¶ 12. A few months prior to his resignation, Mr. Clyburn moved his office from Monroe Street to West Main Street in Wytheville. Compl. ¶ 35. On the day that he resigned, Mr. Clyburn left a file folder containing a list of clients' names, contact information, and account balances. Id. ¶ 37. No client files or other documents were found in the office following his resignation. Carol Hartis Aff. ¶ 12, ECF No. 1-2.

Upon resigning from Edward Jones, Mr. Clyburn began working for Ameriprise. Compl. ¶ 9. He opened an Ameriprise office in the same location as his former Edward Jones office on Monroe Street in Wytheville. Id.

### IV.     Mr. Clyburn's Subsequent Communications with Clients

Edward Jones has submitted affidavits from two current employees, Carol Hartis and Curtis Miller, which recount conversations that they had with clients immediately following Mr. Clyburn's resignation. As of June 30, 2020, four days after Mr. Clyburn resigned, twenty clients reported that Mr. Clyburn had already called them, and several of the clients indicated that they would be moving their accounts to Mr. Clyburn.[1] Hartis Aff. ¶¶ 15–17. One client (L.G.) advised Ms. Hartis that Mr. Clyburn had "just called her and asked her to 'come by the office for her review.'" Id. ¶ 22. At least three clients (B.F., C.G., and D.N.) "specifically told" Mr. Miller during the first week of July that Mr. Clyburn had "called them and asked them to move their accounts to Ameriprise." Miller Aff. ¶ 7, ECF No. 1-4. Those clients then cancelled appointments that they had scheduled to meet with Mr. Miller. Id.

On July 15, 2020, Mr. Miller met with another client, S.W. Id. ¶ 8. S.W. "reported that Mr. Clyburn had scheduled an appointment with her before he left Edward Jones for a time after his resignation." Id. "Mr. Clyburn then called her the day he resigned and said he could now tell her why he scheduled the appointment – to do the paperwork to switch firms." Id. S.W. "told Mr. Clyburn on that call that she had not decided if she wanted to switch firms." Id. S.W. has since "reported that Mr. Clyburn called her again and that she was irritated because she plans on staying at Edward Jones." Miller Supp'l Decl. ¶ 3, ECF No. 16-1.

According to Edward Jones' evidence, Mr. Clyburn has also made other statements in an effort to convince the company's clients to transfer their accounts to Ameriprise. For instance, clients have relayed that Mr. Clyburn has questioned whether they can trust the younger financial

---

[1] The clients are identified by their first and last initials for confidentiality purposes.

4

advisor who replaced him at Edward Jones. Id. ¶ 5. Clients have also stated that Mr. Clyburn is promising them lower fees if they transfer their accounts to Ameriprise. Id. ¶ 6.

The record indicates that Mr. Clyburn's efforts have been successful. As of July 20, 2020, approximately $25 million dollars in assets had been transferred to Mr. Clyburn at Ameriprise. Miller Aff. ¶ 11. As of August 13, 2020, Edward Jones' branch office had "lost $42 million dollars in assets out of $70 million." Miller Supp'l Decl. ¶ 7.

For his part, Mr. Clyburn denies taking "any trade secret, customer, or other confidential information that belonged to Edward Jones when [he] resigned, whether electronic or in 'hard copy.'" Clyburn Decl. ¶ 17. Mr. Clyburn also generally denies "solicit[ing] any Edward Jones customer in violation of any agreements with Edward Jones." Id. ¶ 17; see also id. ¶ 23 (denying that he "wrongfully solicited Edward Jones clients"). Mr. Clyburn asserts that he informed a number of his clients at Edward Jones that he had left the company and joined Ameriprise, and that some of those clients chose to transfer their accounts from Edward Jones to Ameriprise, "as is their right." Id. Mr. Clyburn further avers that he "did not send any Ameriprise-branded materials" or "account-transfer paperwork to [his] former customers unless the customer asked [him] to do so." Id. ¶ 22. According to Mr. Clyburn, the majority of the accounts he serviced at Edward Jones belonged to family members, friends, and acquaintances in the Wytheville community. Id. ¶ 15.

## Procedural History

On July 28, 2020, Edward Jones filed this action for injunctive relief against Mr. Clyburn. The complaint asserts claims for misappropriation of trade secrets in violation of the federal Defend Trade Secrets Act and the Virginia Uniform Trade Secrets Act, as well as a claim for breach of contract.

5

Edward Jones has also commenced arbitration proceedings with the Financial Industry Regulatory Authority ("FINRA") Office of Dispute Resolution.  Under the FINRA Code of Arbitration Procedure for Industry Disputes, parties to a pending arbitration "may seek a temporary injunctive order from a court of competent jurisdiction."  FINRA Rule 13804(a).  If temporary injunctive relief is granted by the court, an arbitration hearing on a request for permanent injunctive relief will begin within fifteen days.  FINRA Rule 13804(b).

As permitted by FINRA Rule 13804 and the Agreement, Edward Jones has filed a motion requesting temporary injunctive relief.  Edward Jones seeks to temporarily enjoin Mr. Clyburn from soliciting clients in violation of the Agreement, including by using Edward Jones' confidential client information and/or trade secrets.

## Standard of Review

A temporary restraining order or preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter v. Nat. Res. Defense Council, Inc., 555 U.S. 7, 20 (2008).  A plaintiff seeking such relief must establish that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of injunctive relief, that the balance of equities tips in its favor, and that an injunction is in the public interest.  Id. at 21.

In deciding whether a plaintiff has met its burden of establishing the threshold requirements for temporary or preliminary injunctive relief, the court's scope of review is not limited to evidence that would be admissible at trial.  Instead, the court "may look to, and indeed in appropriate circumstances rely on, hearsay or other inadmissible evidence." G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd., 822 F.3d 709, 725 (4th Cir. 2016), vacated on other grounds, 137 S. Ct. 1239 (2017); see also Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981) ("The

purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits.").

## Discussion

### I. Jurisdiction

The court begins by explaining why it is satisfied that it has jurisdiction to decide the pending motion. As indicated above, the parties retain the right to seek temporary injunctive relief from a court of competent jurisdiction during the pendency of FINRA arbitration proceedings. FINRA Rule 13804(a); see also Fid. Global Brokerage Grp., Inc. v. Gray, No. 1:10-cv-01255, 2010 U.S. Dist. LEXIS 119121, at *1–3 (E.D. Va. Nov. 9, 2010) (granting temporary injunctive relief pending FINRA arbitration and noting that such relief is regularly granted in the Eastern District of Virginia). In the instant action, Edward Jones seeks injunctive relief for alleged violations of federal and state law. It is undisputed that Edward Jones' federal claim "is enough to invoke this Court's federal question jurisdiction in the first instance." Def.'s Br. Supp. Mot. Dismiss 5, ECF No. 15; see also 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions under the Constitution, laws, or treaties of the United States."). Additionally, the court has supplemental jurisdiction over Edward Jones' related state law claims under 28 U.S.C. § 1367(a). Accordingly, the court has jurisdiction to decide whether Edward Jones is entitled to temporary injunctive relief.

## II. <u>Likelihood of Success on the Merits</u>

In order to obtain the requested relief, Edward Jones must first show that it is likely to succeed on at least one of its claims. Stinnie v. Holcomb, 355 F. Supp. 3d 514, 527 (W.D. Va. 2018) (citing League of Women Voters of N.C. v. N.C., 769 F.3d 224 (4th Cir. 2014)). Although the relevant inquiry "requires plaintiffs seeking injunctions to make a clear showing that they are likely to succeed" on the merits, they "need not show a certainty of success." Pashby v. Delia, 709 F.3d 307, 321 (4th Cir. 2013). For the following reasons, the court concludes that Edward Jones has met the requisite burden with respect to its claim for breach of contract. See Jackson v. Stinchcomb, 635 F.2d 462, 476 (5th Cir. 1981) (holding that the "the district judge did not abuse his discretion in granting the preliminary injunction, . . . because Jackson demonstrated that he was likely to succeed on the merits of his state law claim, a claim properly before the district court under the doctrine of pendent jurisdiction"); Forestry Sys., Inc. v. Coyner, No. 1:11-cv-00295, 2011 U.S. Dist. LEXIS 41381, at *4 (M.D.N.C. Apr. 15, 2011) (concluding that the plaintiff had sufficiently demonstrated, for purposes of the pending motion for a temporary restraining order, that it was likely to succeed on the merits of its supplemental state-law claim). Consequently, the court finds it unnecessary to address the claims for misappropriation of trade secrets.

With respect to the claim for breach of contract, Edward Jones contends that Mr. Clyburn has breached the Agreement by, among other actions, actively soliciting Edward Jones' clients. Under Missouri law, which the parties agree applies, a party claiming breach of contract "'must establish the existence of a valid contract, the rights of plaintiff and obligations of defendant under the contract, a breach by defendant, and damages resulting from the breach.'" Gillis v. Principia Corp., 832 F.3d 865, 871 (8th Cir. 2016) (emphasis omitted) (quoting Lucero v. Curators of Univ. of Mo., 400 S.W.3d 1, 5 (Mo. Ct. App. 2013)). At this stage of the proceedings, Mr. Clyburn does

not contest the validity of the Agreement or the non-solicitation provision. Instead, Mr. Clyburn contends that he has not solicited any clients of Edward Jones in violation of the Agreement. To support this argument, Mr. Clyburn relies heavily on the district court's decision in Edward D. Jones & Co., L.P. v. Kerr, 415 F. Supp. 3d 861 (S.D. Ind. 2019), in which a similar request for injunctive relief was denied. That case, however, is readily distinguishable and does not control the court's decision here.

First, unlike in Kerr, the Agreement in this case specifically defines what it means to directly or indirectly solicit clients in violation of the Agreement's non-solicitation provision. See Kerr, 415 F. Supp. at 871 (noting that "solicitation" was not defined in the agreement at issue and that a proposed definition had not been proffered by the parties). The definition is contained in paragraph 15 of the Agreement, which states as follows:

> Your agreement not to solicit means that you will not, during your employment with Edward Jones, and for a period of one year thereafter, initiate any contact or communication of any kind whatsoever for the purpose of inviting, encouraging or requesting any Edward Jones client to transfer from Edward Jones to you or to your new employer, to open a new account with you or with your new employer or to otherwise discontinue his/her/its patronage and business relationships with Edward Jones.

Agreement ¶ 15.

Second, and perhaps more importantly, Kerr is distinguishable from an evidentiary standpoint. In Kerr, the district court specifically emphasized that there was "no evidence to show that Mr. Kerr did anything but inform his former clients of his new employment." Kerr, 415 F. Supp. 3d. at 874 (emphasis added); see also id. at 871 (noting that counsel for Edward Jones acknowledged at the hearing that it lacked evidentiary support for many of its allegations against the plaintiff). Based on the evidence summarized above, the same cannot be said in the instant case. Unlike in Kerr, Edward Jones has provided detailed affidavits and a supplemental

9

declaration indicating that Mr. Clyburn contacted specific clients to schedule appointments, that he asked at least three particular clients to move their accounts to Ameriprise, and that he contacted another client more than once and advised her that he wanted to complete the paperwork necessary for her to switch firms. Although Mr. Clyburn generally denies having solicited clients in violation of the Agreement, his declaration does not specifically address or refute these particular allegations contained in the sworn statements submitted by Edward Jones.

Mr. Clyburn instead suggests that the sworn statements should not be considered because they "are what [his] lawyers call hearsay." Clyburn Decl. ¶ 23. Likewise, during oral argument, defense counsel repeatedly faulted Edward Jones for relying on hearsay to support the pending motion. Under existing caselaw, however, Mr. Clyburn's hearsay challenge is plainly without merit. In G.G. ex rel. Grimm, the United States Court of Appeals for the Fourth Circuit joined seven other circuits in concluding that "district courts may look to, and indeed in appropriate circumstances rely on, hearsay or other inadmissible evidence when deciding whether a preliminary injunction is warranted." 822 F.3d at 725–26 (collecting cases). The Court noted that this conclusion was supported by Supreme Court precedent, which makes clear that motions for preliminary injunctive relief are "governed by less strict rules of evidence." Id. at 725 (citing Camenisch, 451 U.S. at 395). Because "the district court completely excluded some of G.G.'s proffered evidence on hearsay grounds," the Fourth Circuit held that "the district court abused its discretion when it denied G.G.'s request for a preliminary injunction." Id. at 726.

Upon review of the record in this case, the court finds it appropriate to "rely on" and accord greater weight to the hearsay evidence submitted by Edward Jones. Id. As indicated above, the sworn statements from Edward Jones' employees recount information relayed by several specific clients regarding their particular communications with Mr. Clyburn. The sworn statements

clearly support a finding that Mr. Clyburn has initiated contacts with clients "for the purpose of inviting, encouraging or requesting [them] to transfer from Edward Jones" to Ameriprise, or to "open a new account" with Ameriprise, in violation of the Agreement. Agreement ¶ 15; see also Adrian N. Baker & Co. v. Demartino, 733 S.W.2d 14, 17–18 (Mo. App. 1987) (affirming the trial court's finding of solicitation in violation of an employment agreement where the appellant contacted former customers and told them that he was affiliated with another insurance agency, that he liked doing business with them, and that he would like to do business with them in the future). Although Mr. Clyburn may be able to offer evidence to contradict the specific factual assertions made in the affidavits and declaration submitted by Edward Jones, such evidence is not before the court at this time. Accordingly, at this stage of the proceedings, the court concludes that Edward Jones has clearly shown a likelihood of success on the merits of its breach of contract claim. See, e.g., J.P. Morgan Sec., LLC v. Weiss, No. 1:19-cv-4163, 2019 U.S. Dist. LEXIS 198057, at *8, 13, 24 (S.D. Ind. Nov. 15, 2019) (rejecting the defendant's hearsay challenge in response to a motion for temporary restraining order, and holding that the plaintiff's evidence was "sufficient to support a successful breach of contract claim based on the non-solicitation provision," even though the defendant denied soliciting the plaintiff's clients).

### III. Irreparable Harm

The court must next determine whether "irreparable injury is likely" in the absence of temporary injunctive relief. Winter, 555 U.S. at 22 (emphasis in original). To carry its burden, Edward Jones must make a "clear showing that it will suffer harm that is neither remote nor speculative, but actual and imminent." Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell, 915 F.3d 197, 216 (4th Cir. 2019) (internal quotation marks and

citation omitted). "Additionally, the harm must be irreparable, meaning that it cannot be fully rectified" by the final judgment. Id. (internal quotation marks and citation omitted).

Upon review of the record, the court concludes that Edward Jones is likely to suffer irreparable harm in the absence of a temporary restraining order. As summarized above, Edward Jones has presented evidence indicating that Mr. Clyburn has solicited and diverted business from clients serviced by Mr. Clyburn during his employment with Edward Jones. "Thus, plaintiff is suffering present harm from defendant's breach of the non-solicitation [provision]," and it is likely to continue suffering such harm in the absence of temporary injunctive relief. Update, Inc. v. Samilow, 311 F. Supp. 3d 784, 796 (E.D. Va. 2018).

Mr. Clyburn strenuously argues that the harm suffered by Edward Jones—the loss of revenue when a client moves to a different brokerage firm—is not irreparable because Edward Jones can seek compensatory damages during the FINRA arbitration proceedings. As indicated during the hearing, the court finds this argument unpersuasive. "While FINRA may be able to calculate and award monetary damages based on client accounts that already have transferred" from Edward Jones to Ameriprise, "that is only part of the harm and part of the remedy." Weiss, 2019 U.S. Dist. LEXIS 198057, at *27. The Fourth Circuit has recognized that "the threat of a permanent loss of customers and the potential loss of goodwill . . . support a finding of irreparable harm." Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co., 22 F.3d 546, 552 (4th Cir. 1994), abrogated on other grounds by, Winter, 555 U.S. 7. In this case, the harm at issue is not limited to the value of the accounts transferred to Ameriprise. Instead, Edward Jones "also risks losing future business opportunities with the clients defendant has diverted," as well as future referrals from such clients. Update, Inc., 311 F. Supp. 3d at 796.

Thus, at this stage of the proceedings, Edward Jones has met its burden of establishing a likelihood of irreparable harm.

### IV. Balance of the Equities and the Public Interest

Finally, the court is of the opinion that the balance of the equities and the public interest favor granting temporary injunctive relief. Edward Jones has a significant "interest in protecting its customers from diversion," and "the public has an interest in protecting the legitimate expectations of parties to a contract," including non-solicitation agreements. Id. Moreover, an injunction prohibiting Mr. Clyburn from soliciting Edward Jones' clients in violation of the non-solicitation provision will not prohibit customers or clients from transferring their accounts and working with the broker of their choice. Nor will it prevent Mr. Clyburn from continuing to work for Ameriprise or competing in the same industry. Instead, the temporary injunction order will simply require Mr. Clyburn to honor his contractual obligation to refrain from soliciting Edward Jones' clients. Accordingly, the final two Winter factors support the conclusion that temporary injunctive relief is appropriate.

### Conclusion

For the reasons stated, Edward Jones' motion for temporary restraining order will be granted. The court will temporarily enjoin Mr. Clyburn from soliciting clients of Edward Jones in violation of the non-solicitation provision of the Agreement. No security bond will be required at this time.[2]

---

[2] Rule 65 provides that the court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65. Nonetheless, the court "retains the discretion to set the bond amount as it sees fit or waive the security requirement." Pashby, 709 F.3d at 331. Under the circumstances presented and given Edward Jones' substantial assets, the court finds it appropriate to waive the security requirement in this case. See Monroe Div., Litton Bus. Sys., Inc. v. De Bari, 562 F.2d 30, 32 (10th Cir. 1977) (explaining that courts have the discretion to dispense with a security bond where the party requesting an injunction has "considerable assets" and is "able to respond in damages" if the defendant is wrongly enjoined).

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This __19th__ day of August, 2020.

_____
Senior United States District Judge

14